Michael A. Strauss (CA State Bar # 246781)
STRAUSS & STRAUSS, APC
226 W. Ojai Avenue, #101-325
Ojai, California 93023
Telephone: (805) 641-6600
Facsimile: (805) 641-6607
Email: mike@strausslawyers.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

HOWARD J. MOORE, on behalf of himself and a class of employees and/or former employees similarly situated,  ERIK JENSEN, on behalf of himself and a class of employees and/or former employees similarly situated MATTHEW HOBBS, on behalf of himself and a class of employees and/or former employees similarly situated,  BRUCE HEROUX, on behalf of himself and a class of employees and/or former employees similarly situated, DAVID BUZAN, on behalf of himself and a class of employees and/or former employees similarly situated,  JOHN GUNTER, on behalf of himself and a class of employees and/or former employees similarly situated, RYAN BULYCA, on behalf of himself and a class of employees and/or former employees similarly situated,  TRAVIS MAUGER, on behalf of himself and a class of employees and/or former employees similarly situated, MICHAEL F. SMITH, on behalf of

Case No.

**CLASS ACTION COMPLAINT**

himself and a class of employees
and/or former employees similarly
situated, CURTIS MATTIES, on
behalf of himself and a class of
employees and/or former employees
similarly situated, and PATRICK
O'DONNELL, on behalf of himself
and a class of employees and/or former
employees similarly situated,

                              Plaintiffs,

        v.

CHARTER COMMUNICATIONS,
LLC,

                              Defendant.

Plaintiffs, on behalf of themselves and a class of employees and/or former employees similarly situated ("Plaintiffs"), by and through their counsel, bring claims pursuant to the state laws of Connecticut, Florida, Kentucky, Massachusetts, Michigan, Missouri, Montana, New York, North Carolina, Ohio, and Wisconsin, against Defendant CHARTER COMMUNICATIONS, LLC, its subsidiaries and affiliates, and allege, upon personal belief as to themselves and their own acts, and as for all other matters, upon information and belief, and based upon the investigation made by their counsel, as follows:

## **INTRODUCTION**

1.      This is a class action for unpaid wages and/or unpaid overtime compensation brought pursuant to the wage payment and overtime laws of eleven (11) states in which Defendant does business:   Connecticut, Florida, Kentucky, Massachusetts, Michigan, Missouri, Montana, New York, North Carolina, Ohio, and Wisconsin.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d)(2)(a) because the amount in controversy exceeds $5,000,000 and at least one putative class member is a citizen of a state different from the states in which the Defendant is a citizen.

3.     Venue is proper pursuant to 28 U.S.C. § 1391(a) and (c) because Defendant is subject to personal jurisdiction in the Western District of Wisconsin.

## PARTIES

4.     Defendant Charter Communications, LLC ("Charter") is a limited liability company organized under the laws of the State of Delaware.   Charter's principal place of business is at 12405 Powerscourt Drive, St. Louis, St. Louis County, Missouri 63131.

5.     Plaintiff HOWARD J. MOORE ("Moore") is a natural person and resident of Connecticut.  Plaintiff Moore was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff Moore is not subject to Charter's "Solution Channel" arbitration program.   Plaintiff Moore brings this action under Connecticut state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Technicians ("Maintenance Techs") in Connecticut during the applicable statutory period.

6.     Plaintiff ERIK JENSEN ("Jensen") is a natural person and resident of Connecticut.  Plaintiff Jensen was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff Jensen is not subject to Charter's "Solution Channel" arbitration program.  Plaintiff Jensen brings this action under Florida state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Florida during the applicable statutory period.

7.     Plaintiff MATTHEW HOBBS ("Hobbs") is a natural person and resident of Kentucky.  Plaintiff Hobbs was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff Hobbs is not subject to Charter's "Solution Channel" arbitration program.  Plaintiff Hobbs brings this action under Kentucky state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Kentucky during the applicable statutory period.

8.     Plaintiff BRUCE HEROUX ("Heroux") is a natural person and resident of Massachusetts.  Plaintiff Heroux was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff Heroux is not subject to Charter's "Solution Channel" arbitration program.  Plaintiff Heroux brings this action under Massachusetts state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Massachusetts during the applicable statutory period.

9.     Plaintiff DAVID BUZAN ("Buzan") is a natural person and resident of Michigan.   Plaintiff Buzan was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff Buzan is not subject to Charter's "Solution Channel" arbitration program.  Plaintiff Buzan brings this action under Michigan state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Michigan during the applicable statutory period.

10.     Plaintiff JOHN GUNTER ("Gunter") is a natural person and resident of Missouri.   Plaintiff Gunter was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff Gunter brings this action under Missouri state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Missouri during the applicable statutory period.

11.    Plaintiff RYAN BULYCA ("Bulyca") is a natural person and resident of Montana.   Plaintiff Bulyca was employed by Charter as full-time, non-exempt employee during the applicable statutory period.   Plaintiff Bulyca is not subject to Charter's "Solution Channel" arbitration program.   Plaintiff Bulyca brings this action under Montana state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Montana during the applicable statutory period.

12.    Plaintiff TRAVIS MAUGER ("Mauger") is a natural person and resident of New York.   Plaintiff Mauger was employed by Charter as full-time, non-exempt employee during the applicable statutory period.   Plaintiff Mauger is not subject to Charter's "Solution Channel" arbitration program.   Plaintiff Mauger brings this action under New York state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in New York during the applicable statutory period.

13.    Plaintiff MICHAEL F. SMITH ("Smith") is a natural person and resident of North Carolina.   Plaintiff Smith was employed by Charter as full-time, non-exempt employee during the applicable statutory period.   Plaintiff Smith is not subject to Charter's "Solution Channel" arbitration program.   Plaintiff Smith brings this action under North Carolina state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in North Carolina during the applicable statutory period.

14.    Plaintiff CURTIS MATTIES ("Matties") is a natural person and resident of Ohio.   Plaintiff Matties was employed by Charter as full-time, non-exempt employee during the applicable statutory period.   Plaintiff Matties is not subject to Charter's "Solution Channel" arbitration program.   Plaintiff Matties brings this action under Ohio state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Ohio during the applicable statutory period.

15.     Plaintiff PATRICK O'DONNELL ("O'Donnell") is a natural person and resident of Dane County, Wisconsin.  Plaintiff O'Donnell was employed by Charter as full-time, non-exempt employee during the applicable statutory period.  Plaintiff O'Donnell is not subject to Charter's "Solution Channel" arbitration program. Plaintiff O'Donnell brings this action under Wisconsin state law on behalf of himself and all other similarly situated employees who currently work, or who worked for Charter as Maintenance Techs in Wisconsin during the applicable statutory period.

## FACTUAL BACKGROUND

16.     Charter is telecommunications and mass media company that provides cable, internet, and communications products and services throughout the United States.

17.     Plaintiffs and the class members worked for Charter as Maintenance Techs during the applicable statute of limitations period.   Among other duties, Maintenance Techs are responsible for responding to emergency outages in Charter's cable, internet, and communication services infrastructure.  The stakes of the job are high as a single outage may affect tens of thousands of Charter's customers.  Response time to these emergencies is a critical aspect of a Maintenance Tech's duties.

18.     As Maintenance Techs, Plaintiffs and the class members were subjected to Charter's written "on-call" corporate policy (the "On-Call Policy").  The stated purpose of the On-Call Policy was to ensure that Charter's network and systems functioned reliably at all times.  To that end, Charter required Plaintiffs and the class members to work "on-call" for designated periods in order to respond to plant and service emergencies outside of Plaintiffs' and the class members' regular 40-hour workweek schedules.  On-call work was mandatory, and according to Charter, "*an essential function of the position.  An employee's refusal or unavailability may render the employee unqualified for the position*."  Any employee who violated the On-Call Policy was subject to discipline by Charter "*up to and including termination of employment*."

19.     Plaintiffs and the class members were assigned on-call duty according to a rotating schedule.  Plaintiffs and the class members were required to be available 24 hours a day during the periods that they were on-call.  Thus, Maintenance Techs assigned to week-long on-call periods worked 128 on-call hours in addition to their regular full-time 40-hour workweek.

20.     Charter acknowledged and agreed that on-call duty was compensable work. Specifically, Charter paid Plaintiffs and the class members flat-rate compensation known as "On-Call Pay."  On an hourly basis, On-Call Pay amounted to less than $2.00 per hour.

21.     In addition to the weekly On-Call Pay, if Plaintiffs and the class members were required to actually report to a specific location while on-call, Charter paid Plaintiffs and the class members "call-out pay," which was 1.5 times their regular rate of pay.  Plaintiff and the class members were often called in to report to a job site during their on-call periods, sometimes more than once per day.  Getting called in was a major interruption in their day as responding to emergency outages, including travel time, almost always took over one hour, and frequently took several hours.

22.     As Maintenance Techs, Charter subjected Plaintiffs and the class members to numerous restrictions while they worked on-call, including, for example:

> (a) Charter required Plaintiffs and the class members to carry a cell phone at all times;
>
> (b) Charter required Plaintiffs and the class members to always be in an area where Charter could contact them on the cell phones;
>
> (c) Per the express language of the On-Call Policy, the response time for Plaintiffs and the class members to respond to a call from a supervisor or other Charter personnel was within 15 minutes of receiving the call;
>
> (d) The On-Call Policy stated that Plaintiffs and the class members were required to report to the job site or other Charter location as soon as was "*reasonably practical after receiving the assignment*."   Charter also

advised Plaintiff and the class members that they were expected to report to the site and resolve the particular outage or other emergency all within two hours.  The coverage area that Plaintiffs and the class members were responsible for while on-call was expansive.  Therefore, in order to be able to respond and resolve emergencies within Charter's time requirements, Plaintiffs and the class members could not travel beyond their coverage area while working on-call;

(e) Exacerbating the geographic and time constraints, Charter required Plaintiffs and the class members to be effectively <u>anchored</u> to Charter-owned vehicles the entire time that they were on-call.  Specifically, if called in, Plaintiffs and the class members were required report to the site in a Charter-owned vehicle, which was a large "bucket truck" outfitted with a crane-like, mechanized aerial lift platform (the "Bucket Trucks"). The Bucket Trucks enabled Plaintiffs and the class members to perform maintenance and repair work at heights up to about 40 feet.  Per Charter policy, Plaintiffs and the class members took the Bucket Trucks home with them after their regular workweek shifts, including the period during which that they were on-call.  Charter monitored the exact location of the Bucket Trucks at all times through the vehicle's ignition-triggered GPS system;

(f) Charter permitted Plaintiffs and the class members to drive the company-assigned Bucket Trucks for personal use during on-call periods in order to "*minimize response time*" after being called to report to a site. However, Charter did not allow Plaintiffs and the class members to use the Buckets Truck as a regular "daily driver" vehicles in order to perform day-to-day errands and quick trips, nor was it feasible to use the large, heavy-equipment Bucket Trucks for such purposes.   The result is that, while on-call, Plaintiffs and the class members generally had to park and

keep the Bucket Trucks at their residences, and then they stayed there tethered to the Bucket Trucks.  If they traveled more than a few minutes away, they could not comply with their on-call reporting time and outage resolution obligations;

(g) Moreover, any use of the Bucket Trucks *for personal purposes* while on-call was subject to onerous restrictions and requirements.  For example, when Plaintiffs and the class members used their Bucket Trucks during on-call periods, they were required to drive <u>alone</u>.  They were "*strictly prohibited from transporting any-non employee in a Charter vehicle*," including friends or family-members;

(h) Also, during their on-call periods, every time Plaintiffs and the class members drove the Bucket Trucks after leaving them unattended, or every time that they drove the Bucket Trucks in reverse gear – whether using the Bucket Trucks in response to a "call out" from Charter *<u>or for personal use</u>* – Charter required the Plaintiffs and the class members to first perform a "Circle of Safety" procedure.  This extensive vehicle and safety check included "*looking under the vehicle and around the tires for children, animals or other potential hazards, signs of mechanical defects like dripping/puddle of water, oil, transmission or other fluids, and broken, loose, or missing vehicle components*.";

(i) Plaintiffs and the class members were also required to inspect the Bucket Trucks during on-call periods on a daily basis, including on days which Plaintiffs and the class members did not work one of their regular workweek shifts.  This daily inspection requirement included visually inspecting or testing the brakes, steering, lights, wipers, body damage, glass breakage, or other necessary equipment;

(j) Plaintiffs and the class members were also required, on a daily basis, and even on days in which they did not work one of their regular workweek

CLASS ACTION COMPLAINT

shifts, to maintain the Bucket Trucks in a "*neat and clean*" condition by, among other things, disposing of all *"[e]xcessive trash (fast food bags, soft drink cans, coffee cups, candy bar wrappers, etc*." No trash was allowed to be left in the open truck beds or on the aerial lift units.

(k) Further, at all times during the on-call periods, Charter required Plaintiffs and the class members to comply with Charter's Motor Vehicle Policy. As such, if they did drive the Bucket Trucks while on-call, Plaintiff and the class members were prohibited from doing the following – *even if using the Bucket Truck for personal purposes*:

- keeping non-Charter-issued tools or equipment in the Bucket Trucks;
- eating anything;
- making outgoing cell phone calls while driving, including personal calls. They were required to pull over to the side of the road to make the outgoing call, even if they had the capability to make the call using hands-free technology;
- keeping a wireless device on the center console or otherwise "unsecured";
- using a GPS device that required them to physically tap the device;
- using a radar detector;
- transporting firearms, fireworks, or flammable liquids;
- smoking or using smokeless vapor tobacco products; and
- parking the Bucket Trucks on private property other than Plaintiffs' or the class members' own private property. Thus, Plaintiffs and the class members could only park the Bucket Trucks on public streets when they used them for personal purposes while on-call. Further, when they parked the Bucket Trucks on these public streets, Plaintiffs and the class members were required by

Charter to place orange safety cones around the perimeter of the vehicles.

(l) If involved in any accident in the Bucket Trucks during the on-call periods, even on days when they did not work one of their regular workweek shifts, Plaintiffs and the class members were required to submit to a drug and alcohol test within 24 hours. Charter further required Plaintiffs and the class members to "*not admit responsibility for a vehicle accident to any person*" including to law enforcement, even if the accident had been their fault;

(m) In addition to the required "Circle of Safety" check, every time Plaintiffs and the class members left a Bucket Truck unattended, they were required to always lock all doors and equipment containers and ensure that all applicable safety procedures had been followed, and to remove all personal articles from the vehicles or hide the articles from view;

(n) Charter also required Plaintiffs and the class members to always report to a job site in uniform. Because of this restriction, Plaintiffs and the class members had to either wear their uniforms while on-call or always carry the uniforms with them and have them at their immediate disposal so that he had the ability to quickly change if called out; and

(o) Charter also required Plaintiffs and the class members to always remain in the physical and mental condition that was expected during regular work hours, which effectively prohibited them from drinking alcohol, taking sleep aids and various other medications, or engaging in any other activity that might affect their physical or mental condition.

23. As stated, during the on-call periods, Plaintiffs and the class members were required to work on-call every hour outside of their regular work shift. For example, a Maintenance Tech that worked a week-long on-call period worked his or her regular full-time 40-hour work week, and then worked an additional 128 on call

hours.  Despite Charter's agreement that on-call time was compensable working time, and the excessive and highly restrictive degree of control exercised by Charter during the on-call periods, Charter only paid Plaintiffs and the class members flat rate compensation which amounted to less than $2.00 per hour.  This rate was far below the minimum wage and overtime rates of pay required under the state laws applicable to the respective Plaintiffs and class members.

24.     Apart from violating minimum wage and overtime laws with regard to on-call hours, Charter failed to pay minimum wage and overtime compensation for the work that Plaintiffs' and the class members performed in connection with maintaining, inspecting, and safeguarding the Bucket Trucks and adhering to Charter's Motor Vehicle Policy.  For example, Charter required Plaintiffs and the class members to perform a "Circle of Safety" inspection every time they drove the Bucket Truck, even on days that they did not work one of their regular workweek shifts when they used the Bucket Trucks for personal purposes.  This was work in excess of their regular 40-hour workweek for which they received no overtime compensation.   In addition, Charter required Plaintiffs and the class members to perform *daily* maintenance and safety inspections and cleaning of the Bucket Truck, even on days that they did not work one of their regular workweek shifts.  This was also work in excess of Plaintiffs and the class members' regular 40-hour workweek for which they received no overtime compensation.

## CLASS ACTION ALLEGATIONS

25.     Representative Plaintiffs bring claims for relief on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Each representative Plaintiff asserts claims under the respective wage and overtime laws for the state in which that particular representative Plaintiff worked.

26.     Plaintiffs seek to represent a class, and eleven separate sub-classes, that consist of all current and former Charter employees who worked in one or more of the States referenced in Paragraph 1 of this Complaint, who, within the applicable

CLASS ACTION COMPLAINT

limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

27.  The Connecticut sub-class consists of all current and former Charter employees who worked in Connecticut and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

28.  The Florida sub-class consists of all current and former Charter employees who worked in Florida and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

29.  The Kentucky sub-class consists of all current and former Charter employees who worked in Kentucky and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

30.  The Massachusetts sub-class consists of all current and former Charter employees who worked in Massachusetts and who, within the applicable limitations

period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

31.    The Michigan sub-class consists of all current and former Charter employees who worked in Michigan and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

32.    The Missouri sub-class consists of all current and former Charter employees who worked in Missouri and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

33.    The Montana sub-class consists of all current and former Charter employees who worked in Montana and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

34.    The New York sub-class consists of all current and former Charter employees who worked in New York and who, within the applicable limitations

period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

35.    The North Carolina sub-class consists of all current and former Charter employees who worked in North Carolina and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

36.    The Ohio sub-class consists of all current and former Charter employees who worked in Ohio and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

37.    The Wisconsin sub-class consists of all current and former Charter employees who worked in Wisconsin and who, within the applicable limitations period(s): (i) held one or more of the following positions: Maintenance Tech I, Maintenance Tech II, and/or Maintenance Tech III; (ii) are not subject to Charter's "Solution Channel" arbitration program; (iii) were assigned a Charter-owned bucket truck or other company vehicle, and; (iv) and who, on one or more occasion, worked "on-call."

38.    The respective statewide classes are so numerous that joinder of all members is impracticable.  On information and belief, the total number of putative class members for each statewide class is at least fifty individuals.

39.     There are numerous and substantial questions of law and fact common to members of the statewide classes including, but not limited to, the following:

a.  Whether Charter failed to properly compensate class members for all the work that Charter required, encouraged or permitted class members to perform;

b.  Whether Charter failed to pay class members all compensation, including minimum wages and overtime wages, rightfully owed;

c.  Whether Charter failed to compensate class members for all work performed in excess of 40 hours per work week with overtime premium wages;

d.  Whether Charter's payment of On-Call Pay to Maintenance Techs pursuant to its On-Call Policy violates the respective minimum wage and overtime laws of the states where the representative Plaintiff and the class members worked;

e.  Whether Charter willfully failed to comply with the wage and overtime laws of the states where the representative Plaintiffs and the class members worked; and

f.  Plaintiff anticipates that Charter will raise defenses that are common to the class.

40.     The representative Plaintiffs will fairly and adequately protect the interests of the statewide classes.  Representative Plaintiffs have retained experienced counsel that are competent in the prosecution of complex litigation and who have experience acting as class counsel specifically in wage and hour litigation.

41.     The claims asserted by the representative Plaintiffs are typical of the class members they seek to represent. The Representative Plaintiffs have the same interest and suffer from the same injuries as the class members.

42.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims;

however, if any such class member should become known, he or she can "opt out" of this action in accordance with Rule 23.

43.     In addition, the numerous common questions of law predominate over individual questions because Charter's alleged underlying activities and impact of its policies and practices affected class members in the same manner: they were subjected to the same policy of suffering and performing work in excess of 40 hours per work week without receiving their duly-earned overtime premium wages, and suffering and performing work without receiving their duly-earned minimum wages.

44.     A class action is superior to other available means for the fair and efficient adjudication of this controversy because the individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, the expenses and burden of individual litigation would make it difficult for plaintiffs to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Charter and/or substantially impair or impede the ability of class members to protect their interests.

45.     Without a class action, Charter will likely retain the benefit of its wrongdoing and will continue a course of action, which will result in further damages to the Plaintiffs and the class members.

## THE CONNECTICUT SUB-CLASS

### COUNT I
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
### the STATE LAWS OF CONNECTICUT

46.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

47.     The time that Plaintiff Moore and the Connecticut class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Connecticut's wage and hour laws.

48.     Charter has failed to pay Plaintiff Moore and the Connecticut class members minimum and/or actual wages for the activities described herein in violation of Connecticut's wage and hour laws.

### COUNT II
### FAILURE TO PAY OVERTIME COMPENSATION UNDER THE STATE LAWS OF CONNECTICUT

49.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

50.     The time that Plaintiff Moore and the Connecticut class members spent engaged in the activities described herein is compensable as overtime wages under Connecticut's wage and hour laws.

51.     Charter has failed to pay Plaintiff Moore and the Connecticut class members overtime wages for the activities described herein in violation of Connecticut's wage and hour laws.

## THE FLORIDA SUB-CLASS

### COUNT III
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER THE STATE LAWS OF FLORIDA

52.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

53.     The time that Plaintiff Jensen and the Florida class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Florida's wage and hour laws.

54.     Charter has failed to pay Plaintiff Jensen and the Florida class members minimum and/or actual wages for the activities described herein in violation of Florida's wage and hour laws.

## THE KENTUCKY SUB-CLASS

### COUNT IV
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER THE STATE LAWS OF KENTUCKY

55.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

56.     The time that Plaintiff Hobbs and the Kentucky class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Kentucky's wage and hour laws.

57.     Charter has failed to pay Plaintiff Hobbs and the Kentucky class members minimum and/or actual wages for the activities described herein in violation of Kentucky's wage and hour laws.

### COUNT V
### FAILURE TO PAY OVERTIME COMPENSATION UNDER THE STATE LAWS OF KENTUCKY

58.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

59.     The time that Plaintiff Hobbs and the Kentucky class members spent engaged in the activities described herein is compensable as overtime wages under Kentucky's wage and hour laws.

60.     Charter has failed to pay Plaintiff Hobbs and the Kentucky class members overtime wages for the activities described herein in violation of Kentucky's wage and hour laws.

## THE MASSACHUSETTS SUB-CLASS

### COUNT VI
#### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
#### THE STATE LAWS OF MASSACHUSETTS

61.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

62.     The time that Plaintiff Heroux and the Massachusetts class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Massachusetts' wage and hour laws.

63.     Charter has failed to pay Plaintiff Heroux and the Massachusetts class members minimum and/or actual wages for the activities described herein in violation of Massachusetts' wage and hour laws.

### COUNT VII
#### FAILURE TO PAY OVERTIME COMPENSATION UNDER
#### THE STATE LAWS OF MASSACHUSETTS

64.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

65.     The time that Plaintiff Heroux and the Massachusetts class members spent engaged in the activities described herein is compensable as overtime wages under Massachusetts' wage and hour laws.

66.     Charter has failed to pay Plaintiff Heroux and the Massachusetts class members overtime wages for the activities described herein in violation of Massachusetts' wage and hour laws.

CLASS ACTION COMPLAINT

**THE MICHIGAN SUB-CLASS**

**COUNT VIII**
**FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER**
**THE STATE LAWS OF MICHIGAN**

67.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

68.     The time that Plaintiff Buzan and the Michigan class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Michigan's wage and hour laws.

69.     Charter has failed to pay Plaintiff Buzan and the Michigan class members minimum and/or actual wages for the activities described herein in violation of Michigan's wage and hour laws.

**COUNT IX**
**FAILURE TO PAY OVERTIME COMPENSATION UNDER**
**THE STATE LAWS OF MICHIGAN**

70.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

71.     The time that Plaintiff Buzan and the Michigan class members spent engaged in the activities described herein is compensable as overtime wages under Michigan's wage and hour laws.

72.     Charter has failed to pay Plaintiff Buzan and the Michigan class members overtime wages for the activities described herein in violation of Michigan's wage and hour laws.

CLASS ACTION COMPLAINT

## THE MISSOURI SUB-CLASS

### COUNT X
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
### THE STATE LAWS OF MISSOURI

73.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

74.     The time that Plaintiff Gunter and the Missouri class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Missouri's wage and hour laws.

75.     Charter has failed to pay Plaintiff Gunter and the Missouri class members minimum and/or actual wages for the activities described herein in violation of Texas' wage and hour laws.

### COUNT XI
### FAILURE TO PAY OVERTIME COMPENSATION UNDER
### THE STATE LAWS OF MISSOURI

76.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

77.     The time that Plaintiff Gunter and the Missouri class members spent engaged in the activities described herein is compensable as overtime wages under Missouri's wage and hour laws.

78.     Charter has failed to pay Plaintiff Gunter and the Missouri class members overtime wages for the activities described herein in violation of Missouri's wage and hour laws.

## THE MONTANA SUB-CLASS

### COUNT XII
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
### THE STATE LAWS OF MONTANA

79.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

80.     The time that Plaintiff Bulyca and the Montana class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Montana's wage and hour laws.

81.     Charter has failed to pay Plaintiff Bulyca and the Montana class members minimum and/or actual wages for the activities described herein in violation of Montana's wage and hour laws.

### COUNT XIII
### FAILURE TO PAY OVERTIME COMPENSATION UNDER
### THE STATE LAWS OF MONTANA

82.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

83.     The time that Plaintiff Bulyca and the Montana class members spent engaged in the activities described herein is compensable as overtime wages under Montana's wage and hour laws.

84.     Charter has failed to pay Plaintiff Bulyca and the Montana class members overtime wages for the activities described herein in violation of Montana's wage and hour laws.

CLASS ACTION COMPLAINT

## THE NEW YORK SUB-CLASS

### COUNT XIV
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER THE STATE LAWS OF NEW YORK

85.    Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

86.    The time that Plaintiff Mauger and the New York class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under New York's wage and hour laws.

87.    Charter has failed to pay Plaintiff Mauger and the New York class members minimum and/or actual wages for the activities described herein in violation of New York's wage and hour laws.

### COUNT XV
### FAILURE TO PAY OVERTIME COMPENSATION UNDER THE STATE LAWS OF NEW YORK

88.    Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

89.    The time that Plaintiff Mauger and the New York class members spent engaged in the activities described herein is compensable as overtime wages under New York's wage and hour laws.

90.    Charter has failed to pay Plaintiff Mauger and the New York class members overtime wages for the activities described herein in violation of New York's wage and hour laws.

CLASS ACTION COMPLAINT

## THE NORTH CAROLINA SUB-CLASS

### COUNT XVI
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
### THE STATE LAWS OF NORTH CAROLINA

91.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

92.     The time that Plaintiff Smith and the North Carolina class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under North Carolina's wage and hour laws.

93.     Charter has failed to pay Plaintiff Smith and the North Carolina class members minimum and/or actual wages for the activities described herein in violation of North Carolina's wage and hour laws.

### COUNT XVII
### FAILURE TO PAY OVERTIME COMPENSATION UNDER
### THE STATE LAWS OF NORTH CAROLINA

94.     Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

95.     The time that Plaintiff Smith and the North Carolina class members spent engaged in the activities described herein is compensable as overtime wages under North Carolina's wage and hour laws.

96.     Charter has failed to pay Plaintiff Smith and the North Carolina class members overtime wages for the activities described herein in violation of North Carolina's wage and hour laws.

## THE OHIO SUB-CLASS

### COUNT XVIII
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
### the STATE LAWS OF OHIO

97.    Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

98.    The time that Plaintiff Matties and the Ohio class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Ohio's wage and hour laws.

99.    Charter has failed to pay Plaintiff Matties and the Ohio class members minimum and/or actual wages for the activities described herein in violation of Ohio's wage and hour laws.

### COUNT XIX
### FAILURE TO PAY OVERTIME COMPENSATION UNDER
### the STATE LAWS OF OHIO

100.    Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

101.    The time that Plaintiff Matties and the Ohio class members spent engaged in the activities described herein is compensable as overtime wages under Ohio's wage and hour laws.

102.    Charter has failed to pay Plaintiff Matties and the Ohio class members overtime wages for the activities described herein in violation of Ohio's wage and hour laws.

## THE WISCONSIN SUB-CLASS

### COUNT XX
### FAILURE TO PAY MINIMUM OR ACTUAL WAGES UNDER
### the STATE LAWS OF WISCONSIN

103.    Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

104.   The time that Plaintiff O'Donnell and the Wisconsin class members spent engaged in the activities described herein is compensable as minimum and/or actual wages under Wisconsin's wage and hour laws.

105.   Charter has failed to pay Plaintiff O'Donnell and the Wisconsin class members minimum and/or actual wages for the activities described herein in violation of Wisconsin's wage and hour laws.

## COUNT XXI
### FAILURE TO PAY OVERTIME COMPENSATION UNDER THE STATE LAWS OF WISCONSIN

106.   Plaintiffs re-allege and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

107.   The time that Plaintiff O'Donnell and the Wisconsin class members spent engaged in the activities described herein is compensable as overtime wages under Wisconsin's wage and hour laws.

108.   Charter has failed to pay Plaintiff O'Donnell and the Wisconsin class members overtime wages for the activities described herein in violation of Wisconsin's wage and hour laws.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs and the class members request that this Court:

1.   Certify the state law claims set forth above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.   Award Plaintiffs and the class members their unpaid minimum, actual, and/or overtime wages as provided under the state laws of Connecticut, Florida, Kentucky, Massachusetts, Michigan, Missouri, Montana, New York, North Carolina, Ohio, and Wisconsin.

3.   Award Plaintiffs and the class members liquidated damages, or other statutory penalties, as provided under applicable state law.

CLASS ACTION COMPLAINT

4.      Award Plaintiffs and the class members attorney's fees, costs, and interest as provided under state law;

5.      Award such other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the class members respectfully demand a jury trial on all claims triable.

                                        Respectfully submitted,


Date: July 6, 2021                      STRAUSS & STRAUSS, APC


                            By:    s/ Michael A. Strauss
                                   Attorneys for Plaintiffs, individually
                                   and on behalf of all others similarly
                                   situated

CLASS ACTION COMPLAINT